[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 348 
Following a trial de novo in the circuit court, a jury found the appellant, David Leslie Hopper, guilty of driving while under the influence ("DUI"),[1] driving on the wrong side of the road, improper lane usage, possession of marijuana in the second degree, and possession of drug paraphernalia. For the DUI conviction (CC-98-222), the trial court sentenced Hopper to 10 days in the city jail; that sentence was suspended and Hopper was placed on 12 months' probation. For driving on the wrong side of the road (CC-98-223) and for improper lane usage (CC-98-224), the trial court fined Hopper $25 for each conviction. For possession of marijuana in the second degree (CC-98-225), the trial court sentenced Hopper to six months in the city jail. For possession of drug paraphernalia (CC-98-226), the trial court sentenced Hopper to 30 days in the city jail. The sentences were ordered to run concurrently.
The State's evidence tended to show the following. On September 13, 1997, at approximately 8:30 p.m., Corp. Howard Daniel Fells of the Prattville Police Department was travelling south in his patrol car on U.S. Highway 31 in Prattville when he *Page 349 
noticed a white 1992 Pontiac Bonneville automobile travelling in the same direction. Also travelling south on Highway 31, in a second patrol car near Corp. Fells's car, was Sgt. Anthony L. Ricks of the Prattville Police Department. Corp. Fells and Sgt. Ricks were responding to a reported trespassing incident near Cooter's Pond Road.
Corp. Fells testified that the white Bonneville was travelling in the far left lane of the highway when suddenly, without giving a turn signal, the Bonneville cut across the middle lane of traffic and into the right turn lane, cutting off both Corp. Fells's vehicle and Sgt. Ricks's vehicle. Corp. Fells stated that he had to slam on his brakes to avoid hitting the Bonneville. He stated that the Bonneville then turned left onto Scenic View Drive, running a stop sign in the process, and then immediately turned right onto Cooter's Pond Road. According to Corp. Fells, the Bonneville proceeded down the wrong side of Cooter's Pond Road for approximately 300 yards.
Corp. Fells flashed the lights on his patrol car and signalled for the Bonneville to stop. Corp. Fells and Sgt. Ricks then pulled their vehicles in behind the stopped Bonneville. The Bonneville's driver — the appellant Hopper — immediately got out of the Bonneville and began walking toward Corp. Fells's patrol car; however, Corp. Fells ordered Hopper to return to his vehicle. After Hopper returned to the Bonneville, Corp. Fells approached the driver's side of the car while Sgt. Ricks approached the passenger side.
There were two passengers in the Bonneville with Hopper. Corp. Fells asked Hopper to step out of the vehicle, and Hopper complied. Corp. Fells testified that at that point he smelled the odors of alcohol and marijuana emanating from Hopper's person. Corp. Fells also stated that Hopper's speech was slurred.
Corp. Fells then asked Hopper to step to the rear of the Bonneville so that he could administer three field-sobriety tests to Hopper. According to Corp. Fells, Hopper failed both the "finger-to-nose" test, and the "count" test. He testified that after Hopper failed the "finger-to-nose" test, Hopper refused to take the test again. Corp. Fells also stated that he attempted to give a horizontal-gaze-nystagmus test, but that Hopper refused to follow his instructions for taking the test.
After Hopper failed, or refused to complete, the field-sobriety tests, Corp. Fells searched Hopper's person. During this search, Corp. Fells found a small pipe in Hopper's pants pocket containing what he believed to be marijuana residue. Hopper was arrested for driving while under the influence of a controlled substance and for possession of drug paraphernalia. Corp. Fells also gave Hopper written citations for driving on the wrong side of the road and for improper lane usage.
After Hopper was placed under arrest, Sgt. Ricks called for a tow truck to take Hopper's vehicle to an impoundment lot. According to Sgt. Ricks, before the tow truck arrived, he searched the Bonneville "to make sure there were no valuables or weapons in the car before the wrecker service towed it away." (R. 113.) Under the front passenger-side seat of the car, Sgt. Ricks discovered a bag of what was later determined to be marijuana. Hopper was subsequently charged with possession of marijuana in the second degree.
Following a bench trial in the district court, Hopper was convicted of driving while under the influence, driving on the wrong side of the road, improper lane usage, possession of marijuana in the second degree, and possession of drug paraphernalia. He appealed for a trial de novo in *Page 350 
the circuit court, where a jury found him guilty on all counts.
 I.
Hopper contends that the trial court erred in denying his motion to suppress the pipe found in his pants pocket and the bag of marijuana found under the front passenger-side seat of his automobile because, he says, both were the products of an illegal search and seizure. (Issues IV and V in Hopper's brief to this court.)
In support of his contention that the discovery of the marijuana pipe in his pants pocket was the product of an unlawful search, Hopper directs our attention to Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Hopper maintains that, under Terry, Corp. Fells was not warranted in conducting a "protective patdown" of Hopper's person because, Hopper says, there was no evidence that Corp. Fells felt threatened by Hopper or felt that his safety or the safety of others was in danger. In addition, Hopper maintains that even if a protective patdown was justified, Corp. Fells exceeded the lawful scope of Terry by reaching into his pants pocket and retrieving the marijuana pipe.[2]
Although the argument Hopper makes on appeal is that the search of his person was unlawful under Terry, we find it unnecessary to reach the Terry issues raised by Hopper because we conclude that the search of Hopper's person was proper as a search incident to a lawful arrest.
 "This Court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App. 1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala. 1985). (Emphasis added [in Bivens].) Pursuant to a lawful arrest, a search of the person can be conducted for the purpose of obtaining weapons, evidence, or contraband. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)."
Bivins v. State, 710 So.2d 521, 524 (Ala.Cr.App. 1997).
Corp. Fells testified that when he initially stopped Hopper, Hopper smelled of alcohol and marijuana and his speech was slurred. Hopper subsequently failed (or refused to perform) three field-sobriety tests administered by Corp. Fells. Under these circumstances, Corp. Fells had probable cause to arrest Hopper for driving under the influence of alcohol and/or a controlled substance. See Rule 4.1(a)(1)(ii) and (iii), Ala.R.Crim.P. ("A law enforcement officer may arrest a person without a warrant if . . . [a]ny offense has been committed in the law enforcement officer's presence or view, or . . . [t]he arrest is otherwise authorized by statute, such as *Page 351 
Ala. Code 1975, §§ 32-5-171, 32-5A-191, 15-10-3."). Moreover, the odor of marijuana emanating from Hopper, coupled with Hopper's apparent physical impairment, provided probable cause to arrest Hopper for possession of a controlled substance. See State v.Mathews, 597 So.2d 235, 237-38 (Ala.Cr.App. 1992); andState v. Betterton, 527 So.2d 743, 746 (Ala.Cr.App. 1986), aff'd, 527 So.2d 747 (Ala. 1988).
Instead of immediately arresting Hopper, Corp. Fells searched Hopper and found the marijuana pipe in his pants pocket. At that point, Corp. Fells formally arrested Hopper. Although the search of Hopper preceded his formal arrest, it is well settled that "`[a] search conducted immediately prior to an arrest may be justified as incident to arrest if the police had probable cause to arrest the suspect before conducting the search.'" State v.Mitchell, 722 So.2d 814, 821 (Ala.Cr.App. 1998), quoting Price v.State, 725 So.2d 1003, 1040 (Ala.Cr.App. 1997), aff'd,725 So.2d 1063 (Ala. 1998), cert. denied, 526 U.S. 133, 119 S.Ct. 1809,143 L.Ed.2d 1012 (1999). In Seay v. State, 651 So.2d 81 (Ala.Cr.App. 1994), we stated:
 "`A search conducted prior to the formal act of arresting is unreasonable only where "a lawful arrest could not have been made prior to the search." LaFave, Search and Seizure, § 5.4(a) (2d ed. 1987).
"`". . . .
 "`"`. . . If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is no case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards."'
"`". . . .
 "`". . . [T]he Supreme Court correctly concluded in Rawlings v. Kentucky, [448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980),] that `where the formal arrest quickly followed on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa,' so long as the fruits of the search were `not necessary to support probable cause to arrest.'"
 "`LaFave, Search and Seizure, § 5.4(a) (2d ed. 1987).'
 "Green v. State, 571 So.2d 356, 359-60 (Ala.Cr.App. 1990) (quoting, in part, Peters v. New York, 392 U.S. 40, 41, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917
(1968)). (Emphasis in original.) Also quoted in Callahan v. State, 644 So.2d 1329, 1332
(Ala.Cr.App. 1994)."
651 So.2d at 83.
Because probable cause was sufficiently established prior to the search, and thus the marijuana pipe found in Hopper's pants pocket was "not necessary to support probable cause to arrest," the search was valid as incident to a lawful arrest. In addition, contrary to Hopper's contention, because Hopper's arrest was lawful, the search of the his car was also lawful. "`After arresting the driver of an automobile, an officer "may, as a contemporaneous incident of that arrest, search the passenger compartment" of that car.'" Jones v. State, 631 So.2d 285, 288
(Ala.Cr.App. 1993), quoting New York v. Belton, 453 U.S. 454, 460,101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).
Accordingly, the trial court did not err in denying Hopper's motion to suppress to the marijuana pipe found in his pants pocket or the bag of marijuana found in his vehicle. *Page 352 
 II.
Hopper also contends that the trial court erred in denying his motion for a judgment of acquittal on the charge of improper lane usage, see § 32-5A-88(1), Ala. Code 1975. (Issue III in Hopper's brief to this court.) Specifically, Hopper contends that the uniform traffic ticket and complaint ("UTTC") and the solicitor's complaint both charge him with improper lane usage on Cooter's Pond Road, which, Hopper says, is not a road with lane markings as required by § 32-5A-88, Ala. Code 1975. Section32-5A-88, Ala. Code 1975, which sets out the rules regarding lane usage, states that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply. . . ."
The record reflects that the UTTC charging Hopper with improper lane usage stated the location of the offense as "at or near Cooter's Pond Road and Scenic Drive." (C. 79.) The solicitor's complaint similarly states the location of the offense as being "upon a public highway or street, namely, Cooter's Pond Road at Scenic Drive." (C. 83.) The testimony at trial indicated that Corp. Fells and Sgt. Ricks first encountered Hopper at the intersection of Highway 31 and Scenic Drive. According to Corp. Fells's testimony, Hopper cut off both patrol cars when he crossed over two lanes of traffic on Highway 31 without signaling. Hopper then ran a stop sign as he turned off Highway 31 onto Scenic Drive. Corp. Fells and Sgt. Ricks followed Hopper and eventually stopped him on Cooter's Pond Road. Corp. Fells testified that Highway 31 is divided into two or more clearly marked lanes.
The State's evidence was sufficient to establish improper lane usage. The testimony of Corp. Fells clearly established that Hopper violated § 32-5A-88, Ala. Code 1975, while he was driving on Highway 31. Although the UTTC and the solicitor's complaint listed the location of the offense as Cooter's Pond Road (where Hopper was actually stopped), rather than Highway 31 (where Hopper committed the traffic infraction), it is well settled that an allegation of the location of the offense in the charging instrument is immaterial to the charge; thus, any variance between the location in the charging instrument and the location adduced by the evidence introduced at trial is also immaterial. See Perryv. State, 549 So.2d 119 (Ala.Cr.App. 1988).
Accordingly, the trial court did not err in denying Hopper's motion for a judgment of acquittal on the charge of improper lane usage.
 III.
In several related issues, Hopper contends that the trial court erred in denying his motion to dismiss the charge of driving while under the influence of a controlled substance and his motion for a new trial on the charge of driving while under the influence of a controlled substance because, he says (1) the UTTC charging him with DUI failed to apprise him of the offense with which he was charged because the UTTC miscited the Code section (Issue I in Hopper's brief to this court); (2) the UTTC — which Hopper says charged him with driving while under the influence of alcohol — was, without Hopper's consent and over his objection, improperly amended by the solicitor's complaint to charge a different offense, specifically, driving while under the influence of a controlled substance (Issue II in Hopper's brief to this court); and (3) the trial court's jury instructions, combined with the general verdict form given to the jury, effectively resulted in two additional charges being levied against Hopper during his *Page 353 
trial. (Issue I in Hopper's brief to this court.)
On the UTTC charging Hopper with DUI, the block next to the line reading "while . . . [u]nder the influence of controlled substance" was checked. (C. 10.) However, on the portion of the UTTC listing the Code section violated, "§ 32-5A-191(a)(2), Ala. Code 1975," was written. Section 32-5A-191(a)(2), Ala. Code 1975, defines DUI as driving or being in actual physical control of any vehicle "while under the influence of alcohol." Hopper was convicted in the district court of driving or being in actual physical control of any vehicle while under the influence of acontrolled substance, a violation of § 32-5A-191(a)(3), Ala. Code 1975. When Hopper appealed to the circuit court for a trial de novo, the prosecutor filed a solicitor's complaint correcting the miscitation on the UTTC and charging Hopper with "driv[ing] or hav[ing] under his actual physical control a motor vehicle while under the influence of a controlled substance, in violation of Section 32-5A-191(a)(3) Of the Code of Alabama, as amended." (C. 12.) Hopper subsequently filed a motion to dismiss the DUI charge in the circuit court on the ground that the UTTC was fatally defective and that it had been improperly amended by the solicitor's complaint. Hopper's motion to dismiss was denied. It appears that the trial court held a hearing on the motion before denying it, but a transcript of that hearing is not included in the record on appeal.
Initially, we note that Hopper's contention that the UTTC failed to apprise him of the charge against him because it miscited the Code section is not preserved for review. Although Hopper contends that he objected to the UTTC at the district-court level, there is no evidence in the record before us that such an objection was made. "It is the appellant's duty to provide this court with a complete record on appeal." Knight v. State,621 So.2d 394, 395 (Ala.Cr.App. 1993). "Where the record is silent, we will not hold that the trial court erred." Id. Because there is nothing in the record showing that Hopper objected to the UTTC until he filed his motion to dismiss in the circuit court, he is deemed to have waived any irregularities in the UTTC. See Hosmerv. City of Mountain Brook, 507 So.2d 1038 (Ala.Cr.App. 1987).
However, even assuming for the sake of argument that this issue was preserved for review, we would still decide it adversely to Hopper. It is well settled that "[a] warrant does not require the same particularity which is demanded in indictments." City ofDothan v. Holloway, 501 So.2d 1175, 1176-77 (Ala.Cr.App. 1986). Even the "incorrect citation of a Code section does not void an indictment which otherwise states an offense." Royer v. State,542 So.2d 1301, 1303 (Ala.Cr.App. 1988). Because the "`mere inclusion of the applicable Code section in a charging instrument is [in]sufficient "to put the defendant on notice that he [is] charged with [a] violation of any provable part of the statutory provision,"'" id., the reference to a statutory source in an indictment is considered a "`"matter of convenience and not of substance."'" Griffin v. State, 428 So.2d 213, 215 (Ala.Cr.App. 1983). It is the language describing the offense that apprises the accused of the charge against him, not the Code citation. Because Corp. Fells checked the line on the UTTC describing the offense of driving while under the influence of a controlledsubstance, Hopper was sufficiently put on notice of the charge against him. "[A]ny miscitation of the applicable Code section [in the UTTC] was `mere surplusage.'" Bexley v. State,705 So.2d 549, 552 (Ala.Cr.App. 1997). See also Ex parte Bush,431 So.2d 563, *Page 354 
564 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175
(1983).
Because the UTTC charged Hopper with driving while under the influence of a controlled substance, the solicitor's complaint also charging Hopper with driving while under the influence of a controlled substance, but citing the correct Code section, was not, as Hopper contends, an improper amendment to the UTTC. Rule 13.5(a), Ala.R.Crim.P., states:
 "A charge may be amended by order of the court with the consent of the defendant in all cases, except to change the offense or to charge new offenses not contemplated by the original indictment. The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced."
(Emphasis added.) This court has held that "[u]nder this rule, an offense is `different' from the charged offense if it is not contemplated or included in the offense alleged in the original complaint or indictment." Bexley, 705 So.2d at 551. The solicitor's complaint, which charged Hopper with driving while under the influence of a controlled substance, added nothing new or different to the UTTC, which also charged Hopper with driving while under the influence of a controlled substance; it merely cited the correct Code section. This was not an amendment charging an "additional or different offense." Thus, Hopper's argument that the solicitor's complaint improperly amended the UTTC is not well taken.
However, we agree with Hopper's contention that the trial court's jury instructions, combined with the general verdict form given to the jury, effectively resulted in two additional charges being levied against Hopper during his trial; thus, we must reverse Hopper's conviction for driving under the influence.
The record reveals that the trial court improperly instructed the jury on three different kinds of DUI. The trial court instructed the jury that it could find Hopper guilty of driving while under the influence of alcohol, see § 32-5A-191(a)(2), Ala. Code 1975, driving while under the influence of a controlled substance, see § 32-5A-191(a)(3), Ala. Code 1975, or driving while under the combined influence of alcohol and a controlled substance, see § 32-5A-191(a)(4), Ala. Code 1975. Because Hopper was actually charged only with violating § 32-5A-191(a)(3), Ala. Code 1975 — i.e., driving while under the influence of a controlled substance — the trial court's instructions that the jury could find Hopper guilty under the two other methods of DUI were erroneous. See Royster v. City of Montgomery,470 So.2d 1348, 1350 (Ala.Cr.App. 1985) ("trial judge erred in charging the jury on the offense of driving under the influence of a controlled substance and the offense of driving under the influence of a combination of a controlled substance and alcohol" where defendant was charged only with driving under the influence of alcohol).
The error in the trial court's jury instructions was compounded by the general verdict form given to the jury. Regarding the DUI conviction, the jury returned the following verdict:
"Guilty Verdict — DUI CC-98-222
 "We the jury find the Defendant, David Leslie Hopper, guilty of the offense of DUI. [Driving Under the Influence]."
(C. 39.)
The trial court's erroneous jury instructions, combined with the general verdict form, make it impossible for a reviewing court to determine which subsection of § 32-5A-191, Ala. Code 1975, the jury actually found Hopper guilty of violating. *Page 355 
The trial court's instructions covered three separate offenses: driving while under the influence of alcohol, driving while under the influence of a controlled substance, and driving while under the influence of a combination of alcohol and controlled substances. Because Hopper was charged only with driving while under the influence of a controlled substance, he could not legally be convicted of driving while under the influence of alcohol or of driving while under the combined influence of alcohol and controlled substances. However, because the general verdict form for the DUI charge does not indicate under which subsection of § 32-5A-191, Ala. Code 1975, Hopper was found guilty and because the trial court instructed the jury on three variants of DUI, we are unable to determine whether the jury convicted Hopper of driving while under the influence of a controlled substance, of driving while under the influence of alcohol, or of driving while under the combined influence of alcohol and controlled substances. Thus, we must reverse Hopper's conviction for "driving while under the influence" and remand this cause for a new trial on the charge of driving while under the influence of a controlled substance, a violation of § 32-5A-191(a)(3), Ala. Code 1975.
However, Hopper's convictions for driving on the wrong side of the road, improper lane usage, possession of marijuana in the second degree, and possession of drug paraphernalia are affirmed.
AFFIRMED AS TO CC-98-223, CC-98-224, CC-98-225 AND CC-98-226; REVERSED AS TO CC-98-222; AND REMANDED.
McCMILLAN, COBB, BASCHAB, and FRY, JJ., concur.
[1] Because we are unable to determine which variant of the offense of DUI the jury actually found Hopper guilty of committing (see Part III of this opinion), we refer to Hopper's DUI conviction as being for "driving while under the influence," without specifying whether the jury found Hopper to be driving while under the influence of alcohol, while under the influence of a controlled substance, or while under a combination of both alcohol and a controlled substance.
[2] Although it is not challenged by Hopper on appeal, we note that the initial stop of Hopper's vehicle was valid. "`[W]hile mere suspicion, without more, is not sufficient justification for stopping a vehicle, if the officer can point to independent facts which lead to his "articulable and reasonable" suspicion that the . . . occupants [of the vehicle] have violated some law, then stopping the vehicle would be justified under the fourth amendment.'" Ervin v. State, 630 So.2d 115, 117 (Ala.Cr.App. 1992), quoting Ex parte Yeung, 489 So.2d 1106, 1109 (Ala. 1986). Corp. Fells's personal observations of Hopper improperly changing lanes, running a stop sign, and driving on the wrong side of the road — all clear traffic violations — provided sufficient grounds for him to stop Hopper's vehicle.